All rise. United States Court of Appeals of the Ninth Circuit is now in session. Hello, Commissioner. Peter Elsheloff presiding. Please be seated. Good afternoon. This is the matter in Re. Joel David Joseph, Ninth Circuit docket number 17-80009. And this is a hearing requested by Mr. Joseph to determine whether the court will impose reciprocal discipline based on the order of disbarment issued by the state in Maryland. And so, Mr. Joseph, we are conducting this hearing at your request by video. I am situated in San Francisco at the headquarters of the Ninth Circuit. And I have with me my law clerk and courtroom deputy, Ed Schiffer. And you are appearing from the historic Pasadena courthouse of the Ninth Circuit. So before we begin, Mr. Joseph, I have a bunch of questions to ask you. I've reviewed the materials that you've submitted and the record of the case. And I have questions I would like to address to you. But before we begin, I would like my courtroom deputy to administer the oath so that everything that we say is on the record under penalty of perjury. So proceed. Mr. Joseph, would you please stand and raise your right hand? Yes. Do you solemnly affirm that the statements you are about to make in the case now before this court will be the truth, the whole truth, and nothing but the truth? And this you do under the penalty of perjury? I do. You may be seated. Okay. All right. So, as you know, this matter is concerns your ability to practice in the Ninth Circuit. And nothing about this hearing will affect any other admission that you have in any other court. And as we proceed, my role is to determine whether you have shown, by clear and compelling evidence, one of the factors that would cause this of the Maryland bar proceeding disbarring you. And, of course, there's the three-step test that originates from the century-old selling U.S. Supreme Court case that requires me to consider whether you received due process in the proceedings, whether there was sufficient evidence to support the discipline to impose, or whether there was some other greater justice that would occur by respecting the Maryland proceeding. So we start with a presumption that the court would respect and impose reciprocal discipline, and your burden is to show by clear and convincing evidence that the court should not do so. All right. Now, as I said, I have reviewed the record of the Maryland proceedings, the decisions of the Judge Duggan and the Court of Appeals. I've taken a look at the matters that you have filed in our court. And what I'd like to do is to begin by asking you my question so you'll know what's on my mind. And then I will give you time after that to cover any other issues that you wish to present before me. Does that sound okay to you? That's fine. That's great. I'd like to thank you for making this opportunity for me to appear and appear by a video conference so I didn't have to travel to San Francisco. You're welcome. Yes, I mean, the thanks are due to our wonderful tech staff that makes this possible. And I've done many dozens of hearings. Usually they are with prisoners incarcerated, but from time to time I do a hearing like this as well. All right. So my first question is, who was it that originally filed a bar complaint against you in Maryland? It was the secretary for my local council. Local council was Robert Moss, and he became irritated with me because he wanted to just drop the Wartell case. And I said, I think it's worth pursuing. Let me try to get a settlement. And I got a $100,000 settlement from the United States Department of Justice, which they don't hand out money easily. And so I did all the work in the district court of the Central District of California. Mr. Moss did virtually nothing, but took half of the proceeds nonetheless, even though our agreement said we were going to share equally. So after he took the money, I filed a complaint in the Superior Court in Santa Monica, challenging that. And thereupon, he had a secretary file a complaint against me that I was not a resident of Maryland when the case was filed so that I had misled him and misled the court about my true residence. So the Santa Monica case that you filed was you sought to disgorge some of the money that he had taken on the 50-50 split? Right. All right. Okay. Thank you. All right. Now, Judge Dugan adopted wholesale the Bar Council's proposed findings. And you point that out. Now, my question for you is, do you have any authority that you can cite any decision of a court that says that doing so is a violation of the due process clause? I saw what you said about the Supreme Court case. Let's see. I think it was the 1964 Supreme Court case where you cite United States versus the El Paso natural gas case. The 1964 United States versus El Paso natural gas, the Supreme Court called the judge who adopted the party's findings of fact and verbatim, quote, not the product of the workings of a district court judge's mind, unquote, and noted that the findings of facts had been, quote, mechanically adopted by the district court, close quote. So I think the Supreme Court's authority there is that that is a violation of due process. Did the court say due process? They didn't use those words that I remember. But that's the best you got? The best authority you have for that proposition? Well, yeah. I think that's the strongest authority I have is that case and the footnote that I gave quoting Judge Skelly Wright. Right. Yeah. All right. And in those cases, they were talking about just copying part of a submission by someone else. In this case, the judge actually took the proposed findings of fact and conclusions of law and just wrote, made that the final order, just adopted it. And at the same time, Judge Dugan said that I had not filed my proposed findings of fact and conclusions of law, but I did. And the Court of Appeals found that I did and asked Judge Dugan to reconsider based on my proposal. And he once again did not change a single word of the proposed findings. Is there any other due process claim you have? Any other bias by Judge Dugan other than his wholesale adoption of the proposed findings? Oh, not of Judge Dugan, no. All right. Okay. There was a time when Ms. Brewer informed you that the State Bar of California required your residential address. Yes. And so I'm trying to analyze your thought process when that occurred and what prompted you to identify the address in Maryland of a post office box as an apartment? Well, that was the address where I had changed my voter registration to and the State of Maryland allows you to use a PO box or a UPS box as a voter registration address. All right. But my understanding is that you told her it was an apartment. No, I did not. Apartment 118. That's what the findings were. Well, the findings are wrong. The findings are inaccurate. But isn't that a credibility determination? Isn't that what the evidence was of what she said? Yes, she did say that. Yes, she did. Right. All right. Okay, moving on to the question of the sufficiency of the evidence. You say that the Court of Appeals decision lacked a sound factual record. I think that you used exactly those words, lack of sound factual record. But isn't it just that the court chose to believe some evidence over other evidence? Maybe evidence you believe is wrong, but they made that call? No, I don't think so. The court did not even mention or quote anything from my proposed findings, but I proved that I was registered to vote in the State of Maryland and then I paid taxes in the State of Maryland. And the Ohio board that considered the same matter found that I had. I think the findings include that. Paragraph 7 of Exhibit A, Petitioner presented evidence at the hearing in this matter that demonstrated that he held a Maryland driver's license, that he filed income tax returns in the State of Maryland during the time period in question. So my evidence was undeniable and absolute proof that I was a bona fide resident of the State of Maryland. So to the extent that the Maryland courts made credibility determinations, is there a basis that you can identify how this court could overturn or reject those credibility determinations? I don't think there were any credibility determinations. None. Well, I mean, okay, they found that, that Ms. Brewer, I told Ms. Brewer that this was an apartment, not a UPS box. Well, how is that relevant to my residency in the State of Maryland? That it was your residence and a post office box was your residence. When they, when she said, well, the State Bar doesn't want an office address and wants a residential address. Well, that, that was my residence. That's where I was registered to vote. Well, it might've been in your domicile, but how do you support that, that a post office box was your residence? Well, because the State of Maryland allows it, because a corporation can have such a residence and that if people in corporations have the same rights that a person should be able to use a UPS box or a office address as a residence as well. Is the court, is, are you saying that if I have two residences, that if I'm wealthy enough to have two residences, I'm okay? But if I just have a mailbox, I'm not okay? I'm not a resident of Maryland anymore? Well, the question is, the question is whether the response to the California request about residence was an accurate one. It was. That's the question. I still believe it was. Okay. Um, so you withdrew from the cases in which you were co-counsel with Mr. Moss when there, after there was this problem. When he raised the issue, he, yeah, I withdrew immediately. All right. So did you appear in any other California courts after you withdrew from those cases with Mr. Moss? I don't think so. Not as, not as a pro-Hoffeche anyway. I'm on some cases pro se, your honor. Well, what about, was there a case where you were co-counsel with the law offices of Cyrus and Cyrus? Yes. Wasn't there a pro-Hoffeche application in one of those cases? I believe so. Yes. So you did file pro-Hoffeche after you left with Mr. Moss. After what? After I, after you withdrew from cases that you were co-counsel with Mr. Moss, you, you filed another pro-Hoffeche. Yeah, you are correct. I did forget about that, but yes. Okay. So our court requires attorneys who are suspended or disbarred to report to this court the fact of their suspension and disbarment in another jurisdiction, but you did not do so. Why didn't you report that to the Ninth Circuit? I believe I did. I mailed the circuit courts, I used a mail merge to the courts that I listed in my, in my response. I sent, I sent letters to all the clerks in 2011 or 12. You did? Did you submit that here as part of your submissions in this proceeding? I didn't know it was an issue. Well, it would be helpful to do so. I will give you time to supplement. I would like to see a copy of that because we did not learn of this, as far as I can tell, until, until later, until this year or last year. I think it was this year that we, that we learned about your disbarment. Now, maybe you sent it and if you did, that's an important piece of information for me. Not only to ensure that you're in compliance with our rules, but also to try and discover whether something went awry at our court about handling that, receiving that information. All right. So you want me to submit that next week? I will give you until next Friday to send that. Um, does he have e-filing privileges here? Yes, we can, uh, can he file that by CMCF in this proceeding? Yeah. Okay. So you can file that electronically. You don't have to mail it. It will be simpler for you to just file as a supplemental filing. Um, in fact, we may do an order at the end of this, uh, specifying that. All right. Yeah. Okay. So, um, okay. He said the finding was wrong. First of all, he used the term apartment and all that and then it was a finding. I don't know if it's something that he said. He said that he didn't even find it by his registration. Oh, pay the tax. He didn't pay the tax. Definitely the tax isn't there, but that's what the registration is as well. Um, I'm, I'm returning Mr. Joseph to the, uh, question about what prejudice there was about the findings that you, you provided. Um, and my recollection was that the findings that were, um, here we go, that somewhere in the font, that in general, the findings by the, by that Judge Dugan adopted essentially included all of the information that was in your findings, except for the question about your state of mind, including, I thought that you had paid taxes in Maryland in 2007. Well, um, he didn't adopt any of my findings. Hey, but in a sense that there was no dispute about most of the, or at least all of the findings that you had submitted were also part of the findings and facts that the, uh, the Bar Council had submitted. No, I mean, there was some overlap, certainly, but, uh, the, the factors that the findings of fact and conclusions of law that I submitted were completely different from what Bar Council submitted. Well, they were different in their tone, but as far as in the dates and events, there was, there was a lot of similarity. It's hard to, it's hard to pinpoint, for example, a specific fact that you had put in your findings that weren't also in the findings that the Bar Council did other than state of mind issues. Okay. The, uh, you're generally correct, but I don't think he, and I'm sure he didn't include anything about my taxes paid in the state of Maryland. All right. I thought I had seen that, but that, uh, but you did also pay taxes in California for 2007. Not for 2007. You didn't? Not income taxes for 2007. I thought that was there. Maybe, maybe I'm wrong. The first year I paid income taxes in California was 2008. Oh, you're correct. Yeah, yeah, yeah. But it's in there. Right. Um, I'm, I'm looking at one thing. I'm not sure they say here you paid income tax in 2007 in Maryland. It says, uh, you paid income taxes in California 2008 and 2009, but not in Maryland in 2008 or 2009. I assume that's factually correct. That's factually correct. Except they omitted the fact that I had in my findings, proposed findings, the fact that I paid income taxes for 2007. In Maryland. In Maryland. Yeah. All right. Okay. Um, I think that that's exhaust my prepared questions. Um, but I, as I said, I do want to give you an opportunity to elaborate on any issues. I think, um, I think you have an idea that I'm generally familiar with the background of the case. So, you know, I don't think you need to go through, you know, line by line to tell me everything. But this is an evidentiary hearing. You request it. I don't want to preclude you from, from raising points that you think are important to raise. Um, so I'm going to give you some time to, um, make whatever statement or presentation you think is appropriate. It's now, uh, 325. I'm going to give you like 20 minutes without interruption for you to talk. And then, um, uh, unless I find something that I would like to interrupt you to ask your question. Say your, your, your honor, you can interrupt at any time. Thank you. Um, I think you have covered a lot of the ground that I was going to cover. Um, but let's get the record clear here. I, I want to, um, move the admission of the exhibits that I attached, um, to my submissions. Um, starting with exhibit A, which was the findings, um, of the, um, Board of Professional Conduct of the, uh, Supreme Court of Ohio. Yes. The, um, that's it. Okay. And I'd like to move the admission of exhibit B, which was, um, basically a letter from Jesse Jackson, uh, verifying that I would make a good addition to the, this was submitted to the Maryland Bar recently, which they did not listen to. Um, just, just to keep you up to date though, um, in, in the state of Maryland, you could seek readmission once a year, which I've done. And I've done so for five years in a row. And this time for the first time, I filed a petition for writ of certiorari to the Supreme Court, which is going to conduct a conference in September. And the basic argument is, in that case, is that attorneys should be given the same rights that prisoners are when they have a parole hearing, which means that you get, um, findings of fact, some determination, some reason that the court of appeals, instead of just saying deny every year, has a duty to go further than that. And that's the issue that I've raised with the Supreme Court. Um, so I introduced this letter from Reverend Jackson and from Congressman McGuire, which is Exhibit C, both verifying that I've worked with them for Jesse Jackson for 25 years and, and, uh, Congressman McGuire for more than 10, um, verifying that, uh, with, with, uh, several proceedings and that I always handle everything ethically, correctly, promptly, and got them a good settlement. Um, so I'd like those two exhibits admitted. Those are both admitted. Now, Exhibit D is, uh, really concerns the case that triggered the whole thing, which was, um, the Wartell case. The declaration is from Richard Wartell, who's the brother of the person I represented. He came to me. I was in, I was in California representing a California company in a case that was in Ohio, actually. And he was the, uh, Mr. Wartell's brother was a cab driver, and he told me about his problem with the VA, and no California attorney would take it. So I filed the necessary paperwork with the VA to try to get him compensation. He suffered a stroke and the VA hospital wouldn't do anything for him, sent him away. He went to UCLA hospital where they treated him at great expense. And, um, so he, that's the case I, I settled with the department of justice and that I had, I got a right to sue letter in Maryland that said it had to be filed in the center of California by March of 2007. So I couldn't get local counsel here. I couldn't get counsel to do it. So I came out here. I came out to California to get justice for a veteran. And, um, that's what triggered the whole thing. And Mr. Wartell says that I handled it well for his brother. And he was very happy, pleased with the results. So I'd like that admitted as evidence. Okay. Um, we've gone through the findings of the Ohio board. I'll just emphasize that they demonstrate that at paragraph seven, that I demonstrated that I held a valid Maryland driver's license and paid taxes during the years in question. Um, the third factor, which we haven't touched on today was that the imposition of the same discipline by this court would resolve in a grave injustice. Um, I certainly had, I don't think anybody would doubt that I had reason to believe that I was a Maryland resident in 2007. Uh, I did not intentionally mislead anyone in the Pro Hoc Veche motion. And, you know, frankly, being disbarred for five years is, I think, more punishment than I would have deserved had I done anything intentionally wrong. Um, the findings of the Ohio board in paragraph 13 were quote, based on the evidence presented, the panel unanimously found that petitioner had satisfied all of the requirements for reinstatement to the practice of the law in Ohio, except one. So those requirements are, um, that I have the mental capacity, that I have, uh, not the proper knowledge, so that I'm, I have, um, ethically, um, in good state, in a good state. So, you know, that was a, a long hearing in, in Ohio where we covered everything. And it was, it was a unanimous finding that I should have been admitted, except they couldn't admit me because the Supreme Court said they're going to wait until I'm readmitted in Maryland. But, um, this court is not bound by that. In Ray Ruffalo, the Supreme Court ruled, though admission to practice before a federal court is derivative from membership in a state bar, disbarment by the state does not result in automatic disbarment by the federal court. Though the state action is entitled to respect, it's not conclusively binding on federal courts. Um, and that, um, that cited Theard versus United States. Um, Justice White and Justice Marshall, um, in a concurring opinion said these decisions, Theard and Selling versus Radford, forbids federal court from acting in total reliance on a state judgment. I respectfully request that this court not act in total reliance on the Maryland Court of Appeals and decide whether my actions disqualify me from practicing law in the circuit. Um, I, I, I think that I've always been ethical. Um, this is the only complaint that's ever, I've been practicing law, I was admitted to practice first in, in, uh, D.C. in 1973, passed the bar, and then I passed the bar in Maryland. Um, I, I, I believe that, um, I understand why we have reciprocity because we don't want unethical lawyers or, uh, lawyers who cheat their clients to practice in other jurisdictions. But I didn't cheat any client. No one was hurt by this. At worst, it was a misunderstanding about residence. I wasn't trying to mislead the court or anything like that. I had just come to, um, California six weeks before. Um, this is not like I had lived in California for 10 years. So, um, I think this court should allow me to practice law in the Ninth Circuit. Um, and I believe I'd be a good addition to the bar here. And that's why I submitted Exhibit E, which is one of the 15 books on law that I've written. Um, I'm not sure if you looked at that, but I submitted it to the court. It's, it's my book on the Supreme Court. Um, it's called Black Mondays, The Worst Decisions of the Supreme Court. And Justice Marshall wrote the foreword for me. He disagreed with me about certain cases, but it was an honor to have him do that for me. So I respectfully request that I be allowed to remain a member of the bar of this court. And any, any other documents or questions you have, you know, I'll submit that letter. I hope, hopefully have it from five or six years ago, but I will do my best to get it to the court. Have you, um, pursued the possibility of becoming a member of the California Bar? Yes. Yes, I have. I've taken the bar and, um, I have, although I believe that I passed the bar, the bar examiners did not think so. In terms of the, of the test result, you mean? Yeah, um, you know, the pass rate in California is the last, I just took it in February and the pass rate is 35%. Um, I did take the three-day exam rather than the two-day exam. I took the multi-state and I passed that easily. It's the essay questions. I don't have a problem with essays. I have a problem with how they grade them in California. There's no review. There's no due process. There's another place. There's no due process whatsoever. Most states, most states in this country have two readers of every essay in a bar exam. California has one. They pay the reader three dollars, three dollars per question. And, um, I don't really want to go into that too much, but I really don't think the bar exam is fair in the state of California. Are you planning to try again? I'm not sure. I mean, I'm 69 years old, but I feel young. So what do you, if you were allowed to practice in the Ninth Circuit, what do you foresee as your practice? Um, I, I believe that I have a good talent for writing appellate briefs. So I would, um, you know, try, try and practice, uh, appellate, appellate work. I don't think I would have a huge caseload. Well, I mean, I think the issues here are very straightforward. I mean, you've presented them. There's, um, it's, it's not an easy matter to resolve for me. I think there are competing equities in the case, but I do, um, I, I am, troubled by the fact that you had just come to California six weeks before the, the, the events here that I think that's a, that, that is a concern. On the other hand, I am concerned about the statement of facts that are included in the court of appeals decision that, that are troubling as well. All right. Um, is there anything else that you want to add at the, at this time? I do appreciate your, uh, conducting the hearing and listening to me. And, uh, I think that it appears that you've, uh, read the materials and I appreciate that as well. Well, I'm going to spend some time thinking it through and trying to figure out the appropriate outcome. Uh, and after I do so, I will write it all out. I'll prepare a report and recommendation and that report and recommendation will be 28 days within which to, 20, 21 days within which to file any response that you deem appropriate to, to it. After which the report and recommendation and any submission you have will be sent to a three judge panel who will make the determination whether to adopt my report or reject it or send it back to me for further proceedings. And, uh, it will go from there. All right. All right. Thank you very much. Well, thank you for appealing and good luck to you no matter what the outcome here. Thanks very much. Thank you. This matter is, uh, will be submitted. This matter will be submitted, uh, no later than next Friday after you send that additional matter. All right. Very good. Bye-bye. All rise. Court for this session stands adjourned.
judges: Appellate Commissioner Shaw